IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT HUGHES,                          )
                                        )
             Plaintiff                  )
                                        )
        vs.                             )        Civil Action No. 05-463
                                        )
M. EITNER, C/O I; C. BOWLIN, C/O I; DAVID )      Judge Arthur J. Schwab/
GRANEY, C/O IV; LOUIS FOLINO, Super-    )        Magistrate Judge Amy Reynolds Hay
intendent; JEFFREY BEARD, Secretary of Cor- )
rections; and  Sgt. BARKEFELT; C/O II;  )
                                        )
             Defendants                 )        Dkt. [118]


REPORT AND RECOMMENDATION

RECOMMENDATION

        It is respectfully recommended that the motion for summary judgment filed by defendants

Louis Folino and Jeffrey Beard, Dkt. [118], be granted.  It is further recommended that Plaintiff's

Fourth Amendment claims be dismissed as against all defendants pursuant to the screening

provisions of the Prison Litigation Reform Act for failure to state a claim.

REPORT

        Robert Hughes ("Plaintiff"), a state convicted prisoner, has filed a civil rights action

against six employees of the Pennsylvania Department of Corrections ("DOC"), alleging that all

but two of the Defendants, i.e., Louis Folino ("Folino") and Jeffrey Beard ("Beard"), engaged in

excessive force against him and that all of the Defendants subjected him to cruel and inhumane

conditions when they placed him in a strip cell in December 2004 where they allegedly denied

him the minimal civilized measure of life's necessities.  Folino and Beard (collectively, "the

Moving Defendants") have filed a motion for summary judgment, pointing out that they were not

personally involved in placing and/or maintaining Plaintiff in the strip cell under such allegedly

unconstitutional conditions.  Further, the Moving Defendants argue that they cannot be held

liable  merely based on their position as supervisors or under the theory of respondeat superior.

**_Standard of Review_**

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving

party, "the pleadings, depositions, answers to interrogatories and admissions on file, together

with the affidavits, if any, show that there is no genuine issue of material fact and the movant is

entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  Summary judgment may be

granted against a party who fails to adduce facts sufficient to establish the existence of any

element essential to that party's case, and for which that party will bear the burden of proof at

trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial

burden of identifying evidence which demonstrates the absence of a genuine issue of material

fact.  Once that burden has been met, the non-moving party must set forth "specific facts showing

that there is a genuine issue for trial" or the factual record will be taken as presented by the

moving party and judgment will be entered as a matter of law.  Matsushita Elec. Indus. Corp. v.

Zenith Radio Corp., 475 U.S. 574, 587 (1986).  An issue is genuine only if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party.  Anderson v.

Liberty-Lobby, Inc., 477 U.S. 242, 248 (1986).  In reviewing the summary judgment evidence,

the Court has no duty to search the record for triable issues; rather, it need rely only on those

portions of the evidentiary record to which the nonmoving party directs its attention.  Guarino v.

Brookfield Township Trustees, 980 F.2d 399, 403 (6th Cir. 1992).[1]

---

[1] The court notes that Plaintiff asserts:

> While it is true that the Plaintiff[']s "initial" § 1983 complaint was a brief "over-
> view" to the matters now before the court, it is it is [sic] also true that many of Plaintiff's
> subsequent motions and briefs have outlined in detail the deliberate indifference of both
> Defendants Folino and Beard.
> It has been well settled that pro se complaints must be liberally construed, it is

### The Complaint and Summary Judgment Record

The only allegation against the Moving Defendants is that they allegedly knew about Plaintiff being placed in a strip cell in December 2004 and, during the roughly two weeks while he was housed therein and made to suffer unconstitutional deprivations, the Moving Defendants failed to do anything to intervene to remedy the situation.  Plaintiff alleges that after he was twice assaulted by corrections officers on December 13, 2004, he was then placed in a strip cell in H-block upon Defendant Grainey's orders.  There is no assertion that the Moving Defendants had any role in the assaults.

Thereafter Plaintiff alleges that he was subjected to the following conditions which he alleges were unconstitutional:

> For the first (2) two days [i.e., the 13th and 14th] the staff refused to feed, give water to, or allow Plaintiff to flush his toilet.
> Plaintiff was without toilet-paper for (5) five days [i.e., until December 18th] and basic-hygiene [sic] for (2) two weeks [i.e., until roughly December 27 or 28].

---

also true that all self evident facts must also be considered as part of the complaint however "inartfully" plead.

Dkt. [122] at 1.  To the extent that Plaintiff seeks by these words to argue that the complaint may be amended by anything other than an amended complaint, he is mistaken.  Grayson v. Mayview State Hospital, 293 F.3d 103, 109 n.9 (3d Cir. 2002)("For the sake of clarity,  a prisoner plaintiff (or any other plaintiff) should not be able effectively to amend a complaint through any document short of an amended pleading.").

To the extent that the Plaintiff means to say that this court is obliged to comb through the entire record of the case, including his many briefs and motions to ferret out a material factual dispute, he is again mistaken.  Guarino v. Brookfield Township Trustees.

A distinction must be drawn between motions under Fed.R.Civ.P. 12(b)(6) and under Rule 56. See Reed v. Richards, 32 F.3d 570 (Table)(7th Cir. 1994)("Reed submits that, because he is a pro se litigant, the district court should have overlooked these deficiencies and considered the exhibits. We disagree. While a district court, in considering the allegations in a pro se litigant's complaint, must overlook the fact that the allegations are unartfully pleaded, Haines v. Kerner, 404 U.S. 519 (1972) (per curiam), this does not mean that the court, in considering materials filed in opposition to a motion for summary judgment, should overlook the requirement of Federal Rule of Civil Procedure 56(e) . . . .  The 'liberal construction' afforded the pleadings of pro se litigants cannot be used as a mechanism for avoiding federal rules of evidence and civil procedure.").

Plaintiff was without a mattress for (7) seven days [i.e., until December 20], sleeping on the concrete floor because the bare metal bed-frame was like ice, it was December.

Complaint, Dkt. [2] at attached p. 4 of 7, ¶23.

With respect to the Moving Defendants, the operative complaint alleged only the following as the basis for imposing liability upon them:

As Plaintiff [was] in a Strip-Cell, un-named inmates –(fear of retaliation)– sent request slips to –(on behalf of Plaintiff)– Cpt. David Grainey and Superintendant [sic] Louis Folino asking for their intervention.
Plaintiff's family contacted Mr. Folino's office and that of Secretary of Corrections Jeffrey Beard. Mr. Dan Davis – (Asst. to Folino)– did speak with Plaintiff's family, –(denying any misconduct on part of staff)– Mr. Beard's office did not [although not entirely clear, it appears that Plaintiff means, Mr. Beard's office did not speak with Plaintiff's family, and **not** that Mr. Beard's office did not deny misconduct on the part of staff] .

. . . .

On January 6, 2005, Plaintiff sent copies of Affidavit to Grievance Investigator Lt. Workman –(Security)– and Superintendent Folino, outlining the abuse that was committed by members of SCI Corrections Staff. –(Ex. 7A-d)–

Complaint, at attached pp. 5 of 7 and 7 of 7,  ¶¶ 26, 32.

*Discussion*

In response to the form complaint's question of what federal law Plaintiff claims was violated by the Defendants, Plaintiff cited the Fourth, Eighth and Fourteenth Amendments. Complaint, Dkt. [2] at unn. p. 2, ¶ III.  Because it is undisputed that at the time of the alleged violations Plaintiff was a convicted prisoner, the Fourth Amendment has no applicability. Johnson v. City of Cincinnati, 310 F.3d 484 (6th Cir. 2002)("The Fourth Amendment plainly applies to investigatory stops and formal arrests, but does not apply post-conviction.  *See Graham*, 490 U.S. at 395 n. 10; *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975); *see also Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir.2002) ('Which amendment applies depends on the status of the

4

plaintiff at the time of the incident, whether free citizen, convicted prisoner, or something in between.')").  Hence, the complaint fails to state a Fourth Amendment claim and all such claims should be dismissed pursuant to the screening provisions of the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(e) and 1915A and 42 U.S.C. 1997e, all of which are applicable herein.

Accordingly, because Plaintiff is a convicted prisoner, he must look to the standards of the Eighth Amendment for protection against cruel and unusual punishment.  See Gilmere v. City of Atlanta, Ga., 737 F.2d 894, 905 (11th Cir. 1984) ("The proscription against cruel and unusual punishment applies only after a criminal conviction.  Since Patillo did not occupy a convict status, he could not have had an eighth amendment claim.")(internal citations omitted).

As for Plaintiff's citation to the Eighth and Fourteenth Amendments, it is apparent from Plaintiff's arguments and evidence in opposition to the summary judgment motion that Plaintiff is intending thereby simply to mean that he is invoking the protections of the Federal Constitution against cruel and unusual punishment as applied against state actors.  In other words, he is seeking to invoke the standards of the Eighth Amendment, which amendment, strictly speaking is applicable only against federal government actors, as incorporated against state actors via the Fourteenth Amendment's substantive due process clause because, technically, the Eighth Amendment protections apply against the states through the Fourteenth Amendment. See Estelle v. Gamble, 429 U.S. 97, 101-02 (1976) (citing Robinson v. California, 370 U.S. 660 (1962)).  The standards of the Eighth Amendment barring the federal government from inflicting cruel and unusual punishments are the standards applicable to the States through incorporation by the Fourteenth Amendment's substantive due process clause.  See Sistrunk v. Lyons, 646 F.2d 64, 66-67 (3d Cir. 1981)(citing Robinson v. California).   The standards under the Eighth Amendment and the standards under the Fourteenth Amendment are fundamentally identical.

Furman v. Georgia, 408 U.S. 238, 422 n.4 (1972)(Blackmun, J., dissenting) ("the tests for applying these two provisions are fundamentally identical.").  Hereinafter, the court will simply refer to the Eighth Amendment for simplicity's sake.  In addition, because the standards are fundamentally identical under the two constitutional amendments, the court will cite to cases without distinguishing those that are properly Fourteenth Amendment cases and those that are properly Eighth Amendment cases.

Hence, Plaintiff's claims against the defendants boil down to a claim that they violated his Eighth Amendment rights to be free from cruel and unusual punishments.  As to the Moving Defendants, Plaintiff's Eighth Amendment claim focuses in on the conditions of confinement he suffered while in the strip cell and a claim that the Moving Defendants failed to intervene to remedy these conditions.  Dkt. [110] at 4 ("Defendants Folino and Beard, after reviewing the facts of the incident, through reports and appeals, failed to remedy such claims.").

The Supreme Court has explained that analysis of a violation of the Eighth Amendment involves a two pronged inquiry: (1) an objective inquiry into the qualitative nature of the harm suffered by the victim of the alleged punishment and (2) a "subjective inquiry" into the mind of the person inflicting the harm.  See Wilson v. Seiter, 501 U.S. 294 (1991). To establish the objective component, a prisoner must adduce evidence that he has been deprived of the "minimal civilized measure of life's necessities."  Young v. Quinlan, 960 F.2d 351, 359 (3d Cir. 1992)(internal quotes omitted), *superseded by statute on other grounds as stated in* Ghana v. Holland, 226 F.3d 175, 184  (3d Cir. 2000).  To establish that one has been deprived of the minimal civilized measure of life's necessities requires a demonstration that one has been denied "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety" from physical assault.  Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997).  To establish the

subjective component, a prisoner must adduce evidence that the prison officials acted with "deliberate indifference." Estelle v. Gamble, 429 U.S. 97, 104 (1976). The Court explained that "deliberate indifference" occurs when a prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). As a corollary of the deliberate indifference standard, mere negligence by staff at the prison is not sufficient to state an Eighth Amendment violation. Estelle, 429 U.S. at 105-06.

Because there is no direct cause of action under the Constitution, a liberal construction of the complaint requires the court to assume Plaintiff is bringing a cause of action pursuant to 42 U.S.C. § 1983. See, e.g., Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001)("a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983."). In order "to survive summary judgment on an Eighth Amendment claim asserted under 42 U.S.C. § 1983, a plaintiff is required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997).

Instantly, the Moving Defendants point out that they were not personally involved with placing and/or maintaining Plaintiff in the strip cell in December 2004. In order to succeed under Section 1983, a plaintiff must adduce evidence that the defendants were personally involved in the deprivation of rights as there is no respondeat superior liability permitted under Section 1983. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)("liability [in a civil rights action] cannot be predicated solely on the operation of respondeat superior"); McClelland

7

v. Facteau, 610 F.2d 693, 695 (10th Cir. 1979) ("Respondeat superior is a doctrine of vicarious liability based upon public policy [and] the notion that the person who benefits by the acts of the servant must pay for wrongs committed by the servant; the one held liable as master need not be at fault in any way.").  "A defendant in a [§ 1983] action must have personal involvement in the alleged wrongs."  Rode v. Dellarciprete, 845 F.2d at 1207.  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Id.  Accord Evancho v. Fischer, 423 F.3d 347, 353 (3d Cir. 2005).

In support of their motion for summary judgment, Moving Defendants averred in affidavits that they were not personally involved in placing or maintaining Plaintiff in the strip cell, nor did they have knowledge of his placement in the cell at the time he was allegedly undergoing the unconstitutional deprivations.  This satisfied their initial burden, as the moving parties, under Walters ex rel. Walters v. General Motors Corp., 209 F.Supp.2d 484.  As the Moving Defendants point out, the latest possible date that Plaintiff suffered the deprivations he complained of in the complaint was December 28, 2004.  Dkt. [120] at 11 (citing Complaint, Dkt. [2] at attached p. 4 of 7, ¶ 23 and Exhibits 7a-d.   Plaintiff did not contest this fact nor adduce evidence of a later date.  Nor does Plaintiff point to any evidence of the Moving Defendants' actual participation or personal direction, from the time period of December 13, 2004, i.e., the date of his placement in the strip cell, to December 28, 2004, i.e., the latest date whereon the alleged Eighth Amendment deprivation took place.

Rather, the only argument Plaintiff raises in his brief in opposition to the Moving Defendants's summary judgment is that the Moving Defendants both had personal knowledge of the alleged unconstitutional conditions in the strip cell and failed to correct them and thereby acquiesced in the violations and, therefore, they have the requisite personal involvement.  He

8

argues personal knowledge based on the following facts: the Moving Defendants had personal knowledge of the events (1) via the grievance appeal process;( 2) via other internal reports; (3) prior notice and (4) systematic abuse.  It is the Plaintiff's burden at trial to prove personal involvement,[2] and hence, his burden here to adduce sufficient evidence of such so as to survive summary judgment.

Plaintiff essentially alleges knowledge on the part of the Moving Defendants based upon his filing of grievance appeals.  However, the language from <u>Dellarciprete</u> and <u>Evancho</u> that requires "knowledge and acquiescence" requires not mere knowledge after-the-fact but knowledge that occurs contemporaneously with the violation and not after the violation has been completed so that failure to act can properly be called acquiescence in the ongoing violation. <u>See</u>, <u>e.g.</u>, <u>Evancho v. Fisher</u>, 423 F.3d at 353 ("Her amended complaint likewise does not contain even a remote suggestion that Attorney General Fisher had contemporaneous, personal knowledge of her transfer and acquiesced in it.); <u>C.H. ex rel. Z.H. v. Oliva</u>, 226 F.3d 198, 202 (3d Cir. 2000)(" a plaintiff asserting a failure to supervise claim must not only identify a specific supervisory practice that the defendant failed to employ, he or she must also allege 'both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar

---

[2]  <u>Beard v. Mitchell</u>, 604 F.2d 485, 498 (7th Cir. 1979)("the plaintiff meets her burden of proof as to personal involvement if she proves by a preponderance of the evidence that the arrest and subsequent murder of Jeff Beard by Stanley Robinson took place at Mr. Mitchell's direction or with his knowledge or consent."); (<u>Dorr v. City of Ecorse</u>, No. 05-73074, 2007 WL 405843, *19 (E.D. Mich. Jan. 30, 2007)("plaintiff meets his burden of proof as to the personal involvement of the supervisor in the subordinate's conduct if he proves by a preponderance of the evidence that the deprivation of his right took place at the supervisor's direction, or with the supervisor's knowledge, acquiescence or consent.").

incidents,[3] and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval.'").

Here, it is undisputed that the first level grievance appeal did not provide contemporaneous knowledge to Defendant Folino because the record establishes he did not receive this appeal until at the earliest, February 11, 2005, the date the first level appeal was signed. Dkt. [2], Complaint, Exhibit 6-C. Even assuming for the sake of argument that Defendant Beard actually receives and reviews the final level of appeals, something that the record does not establish,[4] Defendant Beard would have received knowledge of the events even after Defendant Folino via the grievance system. Accordingly, this evidence fails to establish that the Moving Defendants were personally involved in the alleged constitutional violations.

Plaintiff next claims personal contemporaneous knowledge and acquiescence based on certain reports. Specifically, Plaintiff points to a report referred to as a "DC-709 form" and also

_____

[3] The Court will address the knowledge of a prior pattern of alleged abuse below in the section addressing Plaintiff's allegations relative to an alleged pattern of prior abuse.

[4] See e.g., Dkt. 17-2 at 3, defining "Appeal to Secretary's Office of Inmate Grievances and Appeals" as "[t]he final level of appeal from a grievance" and defining "Chief, Secretary's Office of Inmate Grievances and Appeals" as "[a] management level staff person assigned to the office by the Secretary to oversee the inmate grievance and appeal process, train field staff, and respond to appeals." In none of the third level appeal responses in the record does Defendant Beard's name appear as the responding official. In fact, the final level appeal of Grievance No. 106880, which Plaintiff appended to his Complaint, is addressed, not to Defendant Beard, but to Sharon Burks, who was apparently the Chief of SOIGA at the time. Dkt. 2, Exhibit 6-E. Nor does the shorthand phrase "remanded by Secretary Beard" concerning a final grievance appeal (apparently unrelated to the instant case) filed sometime in early 2006, Dkt. [122], at 28, establish that Defendant Beard himself was personally involved in the final grievance appeals. Even the most generous reading of this phrase, "remanded by Secretary Beard", permits at best, an inference that this was a shorthand phrase for remanded by the SOIGA. Even if we could construe this phrase to mean that in the case of the final grievance filed in 2006 which was remanded, that Secretary Beard himself personally did so, there is no evidence of record that in and around March - April 2005, Secretary Beard was personally involved in the final grievance filed by Plaintiff concerning the relevant conditions of his confinement from December 13, to December 28, 2004. It is not clear how what transpired in a remand of a final grievance in 2006 is relevant to Plaintiff's final level appeal of his grievance in March -April 2005, where there was no remand and where Secretary Beard's name never appears as a responding official.

entitled "Inmate Activity Restriction Form," which is a pre-printed form that has a space at the bottom designated as "cc:" which indicates that a carbon copy of the form is sent to the "Facility Manage,r" which Plaintiff asserts is Defendant Folino.    Dkt. [122] at 5 and at 20 (Ex. 27 which is the DC-709 form). The form indicates that Plaintiff was placed in AC/DC [i.e., administrative or disciplinary custody] status, and that certain restrictions were placed upon him, namely, restrictions on cell-cleaning, shaving, showering, exercise, and that Plaintiff was to have his legs shackled for movement outside the cell.   The form indicates that these restrictions were imposed on Plaintiff as of December 13, 2004, and removed as of December 20, 2004.  Plaintiff points to this form as establishing personal contemporaneous knowledge on the part of Defendant Folino. However, there are several problems with this assertion.

First, there is no indication as to when this form would have been received by Defendant Folino, i.e., whether this form was transmitted to Defendant Folino's office on the date the restrictions were allegedly imposed, i.e., December 13, 2004, or only after the restrictions were removed, i.e., December 20, 2004.  Moreover, even assuming that Defendant Folino saw this report and that he saw it prior to December 28, 2004 (the date whereon the unconstitutional conditions of confinement ceased),[5]  it does not serve to alert him that Plaintiff was suffering any

---

[5]  Knowledge of the conditions after they ceased to exist could not serve as a basis of liability. One of the reasons for the requirement of contemporaneous knowledge is so that the Supervisor has an opportunity to intervene such that the failure to do so may properly be said to have "caused" the deprivation, since any actions or inactions that occur after the alleged deprivation of constitutional rights had already been completed cannot be said to have been the "cause" of Plaintiff's injuries.  Without such causation there can be no liability.  See, e.g., Troublefield v. City of Harrisburg, Bureau of Police, 789 F.Supp. 160, 166 (M.D. Pa. 1992) ("Brower v. Inyo County, 489 U.S. 593 (1989) . . . requires that some nature of volitional act on the part of the state actor must cause the harm to plaintiff for a fourth amendment excessive force claim to sound."); Ricker v. Weston, 27 Fed.Appx. 113, 119 (3d Cir. 2002)("This decision not to discipline the officers does not amount to active involvement in appellees' injuries given that all of the injuries occurred before the decision."); Moor v. Madison County Sheriff's Dept., 30 Fed.Appx. 417, 420 (6th Cir. 2002)("Timing is everything. Cochran did not learn any of these facts until Moor filed her complaint. Specifically, Cochran first learned of the incident on May 27, 1999,

unconstitutional conditions of confinement, yet alone the unconstitutional conditions of confinement for which the complaint seeks to hold the Moving Defendants liable.  In contrast to the restrictions listed on the form, Plaintiff's claims in this lawsuit are that he was denied food and water for two days and was not permitted to flush his toilet for these two days.  Dkt. [2], Complaint at attached p. 4 of 7, ¶ 23.  However on the DC-709 form, the block for checking water restrictions has a line through it, apparently indicating that water was not restricted as opposed to the boxes that were checked, indicating that the restrictions which were checked were the restrictions imposed on Plaintiff.  Dkt. [122] at 20.  Plaintiff also contended that his being without a mattress for seven days was part of the unconstitutional conditions of confinement.  Id.  However, again the DC-709 form made no mention about any such restriction.   There are no boxes for restriction of food (although there is a box for "other restrictions" and that is checked but the restriction specified is a "spit mask.").  The seven day restrictions that the DC-709 form indicates were placed on Plaintiff involved restrictions on out of cell exercise, showering, shaving and cell cleaning.  Such restrictions for seven days simply do not amount to unconstitutional deprivations within the overall context of this suit.  See, e.g., Harris v. Fleming,839 F.2d 1232,1236 (7th Cir. 1988)("If exercise is what Harris desperately wanted he could have improvised temporarily with jogging in place, aerobics, or pushups.  He retained the ability to move about in the unit.  This was a short-term situation, lasting only four weeks. . . . Harris claims only to have been deprived of yard or recreation time, not all exercise.  In modern

when he received a letter from Moor's attorney along with a courtesy copy of the Complaint. After receiving the complaint, Cochran investigated the incident by questioning Arthur, who denied any wrongdoing, and he reviewed the 911 calls for assistance from the Shell station. . . .In fact, Moor's facts reveal that Cochran did not know of the incident [at the time of its occurrence] and therefore could not have implicitly acquiesced in it."); Lanigan v. Village of East Hazel Crest, Ill., 110 F.3d 467, 478 (7th Cir. 1997)("Chief Robertson could not have undertaken any action to 'un-do' any alleged constitutional violation by Sergeant Krane.").

prisons the denial of recreation time may deprive inmates of many desirable, entertaining diversions the lack of which would not raise a constitutional issue."); Broomfield v. Allen County Jail, No. 04-361, 2005 WL 1174123, at *2 (N.D. Ind. 2005) (no Constitutional violation where pretrial detainee was deprived of running water to wash his face or brush his teeth for six days because he was not denied water altogether).  In summary, the DC-709 form, even read in a light most favorable to Plaintiff, does not establish when Defendant Folino learned, if at all, of Plaintiff's restrictions and, furthermore, even assuming that Defendant Folino saw this form prior to December 28, 2004, the form simply did not give him knowledge of unconstitutional conditions of confinement such that he had a duty to remedy those conditions/ restrictions.

Needless to say, this form entirely fails to address Defendant Beard's knowledge and Plaintiff makes no allegation concerning Beard regarding this form.

Next Plaintiff points to a document entitled "Extraordinary Occurrences Report" also referred to as a "DC-121 Report," in support of his contention that the Moving Defendants had contemporaneous knowledge of his allegedly unconstitutional conditions of confinement and so they acquiesced in such unconstitutional conditions.   See Dkt. [122] at 32 and Dkt. [124] at 2.[6] Similar to the  DC-709 form discussed above, the Extraordinary Occurrences report fails to give the Moving Defendants contemporaneous knowledge of the alleged unconstitutional conditions of confinement that Plaintiff allegedly suffered between December 13 and December 28, 2004. First, the date of the form indicating when it was filled out was December 14, 2004; hence, on that day, the form could not have given knowledge to the Moving Defendants of any unconstitutional conditions from December 15 to December 28, 2004.  Moreover, a review of the

---

[6]  The Extraordinary Occurrences Report is apparently a two sided document.  In his brief in opposition, Plaintiff only included one side of the document.  In Dkt. 124, Plaintiff rectified this error by including the second side of the document.

form does not provide any information as to what conditions Plaintiff was undergoing other than possibly alerting the recipients of the form as to the very same restrictions placed upon Plaintiff that the DC-709 form discussed above had noted.  See Dkt. [122] at 32 (portion of the form listing attachments included, where there is a box entitled "Other" which is checked and indicates that the "Inmate Activity Restriction Form" is attached).[7]  Again, this Extraordinary Occurrences form simply fails to provide proof of actual, contemporaneous knowledge on the part of the Moving Defendants of the allegedly unconstitutional conditions of confinement that Plaintiff seeks to hold them liable for as set forth in his complaint.

The third basis upon which Plaintiff seeks to establish personal knowledge and acquiescence is what he labels as "prior notice." Dkt. [122] at 7.  Here, Plaintiff does not so much claim that the Moving Defendants had contemporaneous knowledge of the allegedly unconstitutional deprivations he was undergoing but, instead, Plaintiff attempts to establish personal participation via the second method outlined in C.H. ex rel. Z.H. v. Oliva, 226 F.3d at 202, namely, showing that the defendants possessed "knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval."  Plaintiff alleges that he informed Defendant Folino via a first level grievance appeal, numbered 97146 and dated September 28, 2004, about the "very same systematic retaliatory placement in a strip cell and alert[ed] Folino of this abuse." Dkt. [122] at 7.  Plaintiff cites in support a grievance and first level appeal that he filed in November

_____

[7]  Although Plaintiff does not point this out, it appears that a copy of the Extraordinary Occurrences Form with the Inmate Activity Restriction form attached was sent to the "Secretary of Corrections."  There is no evidence as to when this was done or whether Defendant Beard himself ever saw this form.  Regardless, these two forms fail to give notice of any unconstitutional conditions that Plaintiff claims he was allegedly experiencing and hence do not provide contemporaneous personal knowledge of unconstitutional conduct.

14

2004, wherein he complains that after "an incident involving physical contact with" a corrections officer, Plaintiff was taken out of his cell and placed in another cell, where "the cell [was] completely stripped, water shut off, no toilet paper, [no] mattress, nothing. No clothes, no blanket, nothing, [and] left like that for more than 3 days." Dkt. [122] at 18. Plaintiff points to this as evidence of Defendant Folino's prior knowledge of similar past unconstitutional conditions he was subjected to.

Even if, as Plaintiff contends, he was subjected to such unconstitutional conditions in the past, there is no evidence of record that the Moving Defendants had actual knowledge that Plaintiff was in fact subject to such conditions in the past. Nor does Plaintiff's mere accusation to the Moving Defendants or more properly to Defendant Folino via the September 2004 grievance appeal (that he was subject to unconstitutional conditions) prove the requisite actual knowledge test for supervisory liability given that there is no evidence that the Moving Defendants credited such accusations made by Plaintiff nor that any actions taken on their part to investigate Plaintiff's accusations confirmed those accusations to the satisfaction of the Moving Defendants. In other words, it is not sufficient that the Moving Defendants have knowledge that certain actions were taken against Plaintiff by subordinates but the Moving Defendants must also possess actual knowledge that these subordinates' actions deprived Plaintiff of his constitutional rights. See, e.g., Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir.1997) ("Where a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in ... the ... conduct."), abrogated on other grounds by, Burlington Northern and Santa Fe Ry. Co. v. White, 126 S.Ct. 2405 (2006); Triplett v. Azordegan, 570 F.2d 819, 823 (8th Cir.1978) ("A defendant will not be held liable under ... § 1983 unless he was

personally involved ... or he either has or is charged with having actual knowledge that his subordinates are causing deprivations of constitutional rights"); Potts v. Wright, 357 F.Supp. 215, 218 (E.D.Pa. 1973) ("[D]efendant is not liable under § 1983 unless he 'was personally involved in causing the deprivation of a constitutional right or he either has or is charged with having actual knowledge that his subordinates are causing deprivations of constitutional rights'").  The Moving Defendants are not required under pain of Section 1983 liability to believe every accusation made by a prisoner that his constitutional rights are being violated. Rather, prison officials are entitled to rely on the procedures in place for investigating such claims, such as the grievance procedures employed herein, to investigate such claims and, as in this case, to conclude that Plaintiff's allegations were unfounded.  Prison officials discrediting of prisoner complaints in reliance on the results of the methods for investigating such complaints simply does not amount to the personal knowledge requirement.  Cf. Luks v. Baxter Healthcare Corp., 467 F.3d 1049,1056 (7th Cir. 2006)("the relevant question is not whether the criticisms of his performance were right or wrong but whether his supervisor honestly believed them.") .

Moreover, recalling that this case is governed by the Eighth Amendment standards which require deliberate indifference on the part of defendants, the Moving Defendants' reliance on the results of the grievance system's investigation is not deliberate indifference even if ultimately the grievance procedures failed to produce an accurate result, i.e., concluded that Plaintiff was not subject to such unconstitutional conditions when in fact he was.  The fact that the Moving Defendants concluded that Plaintiff was not subject to conditions he alleged he was, and their apparent disbelief of Plaintiff's allegations to the contrary, even if erroneous, simply does not constitute evidence of the requisite subjective mindset required to establish deliberate indifference.  See  Ammons v. Altergot, 968 F.2d 1218 (Table), 1992 WL 157551, *3 (7th Cir.

16

July 8, 1992)(Nurse "Altergot's belief that Ammons was malingering if honest but erroneous, while crass and unprofessional, would not amount to the deliberate or even reckless infliction of punishment and so would not be actionable under the Constitution.")(some internal quotations omitted); Price v. Cooper, NO. 94 C 5142, 1996 WL 467242, *3 (N.D.Ill. Aug. 12, 1996)("If medical personnel do not respond to complaints of pain, they are not liable if they honestly believed the inmate was malingering.").

As to Defendant Beard, the only evidence Plaintiff points to in trying to establish prior notice is a May 5, 2003 conversation Plaintiff is alleged to have had with Defendant Beard and the Superintendent of SCI-Huntingdon while Beard was on a tour of that facility.  Plaintiff contends that he told Defendant Beard of the "systemic form of abuse" of the strip cell. However, the court finds this alleged conversation concerning a different prison with different parties involved, and concerning a time frame of more than a year before the events giving rise to the current lawsuit, insufficient to give Defendant Beard adequate notice of a past pattern and practice of abuse of the strip cell at SCI-Greene where the alleged unconstitutional conditions of confinement occurred in December 2004.  Massasoit v. Carter, 439 F.Supp.2d 463, 484 (M.D.N.C. 2006) ("accusations of unrelated violations don't prove sufficient connection to risk of a specific injury")(citing Carter v. Morris, 164 F.3d 215, 218-19 (4th Cir.1999)).  This is especially true where there is no evidence of record that Defendant Beard credited Plaintiff's 2003 complaints or that otherwise Plaintiff's 2003 allegations were independently confirmed.

In a last effort to prove actual knowledge and acquiescence by pointing to knowledge of a past practice, Plaintiff points to affidavits of inmates to show that there was a pattern of "systematic abuse."  For the same reason as explained above, absent the Moving Defendants actually crediting these allegations and/or in the absence of any independent corroboration of the

accusations via the procedures in place for doing so (and there is no such corroboration), it

simply cannot be said that there is any evidence that the Moving Defendants had personal

knowledge of unconstitutional conditions and that they also acquiesced in such conditions.

Accordingly, because Plaintiff failed to adduce evidence of personal involvement on that

part of the Moving Defendants, summary judgment should be entered in their favor.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local

Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written

objections to this report.  Any party opposing the objections shall have seven (7) days from the

date of service of the objections to respond thereto.  Failure to timely file objections may

constitute a waiver of any appellate rights.

Respectfully submitted,

/s/  Amy Reynolds Hay
United States Magistrate Judge


Dated:  25 July, 2007

cc:     The Honorable Arthur J. Schwab
        United States District Judge

        Robert Hughes
        AR-4652
        SCI Albion
        10745 Route 18
        Albion, PA 16475

        Scott A. Bradley, Esquire
        by Notice of Electronic Filing