IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT HUGHES, | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action No. 05-463 |
| | ) Magistrate Judge Francis X. Caiazza |
| M. EITNER, C/ O I; C. BOWLIN, C/ O I; DAVID GRAINEY, C/ O IV; LOUIS FOLINO, Superintendent; JEFFREY BEARD, Secretary of Corrections; and Sgt. BARKEFELT, C/ O II. | ) RE: Dkt. [165] |
| Defendants. | ) |

## **MEMORANDUM ORDER**

Presently before the Court is a motion in limine filed by defendants in which they ask the Court to enter judgment as a matter of law with respect to plaintiff's conditions of confinement claims pursuant to Fed. R. Civ. P. 50. Although, as plaintiff correctly points out, the motion is neither a proper motion in limine nor a proper motion for judgement as a matter of law under Rule 50, it nevertheless raises questions regarding plaintiff's ability to prove his conditions of confinement claims at trial which is scheduled to begin on September 13, 2010 -- only three weeks away. Although the better course, perhaps, would have been to seek leave to file a motion for summary judgement following the close of discovery in May of 2010,[1] resolution of defendants' motion in their favor, like a motion for summary judgment, would significantly impact the contours and the length of the trial. Thus, in the interest of conserving the Court's time and efforts as well as that of the parties, the Court has treated defendants' motion as one for

---

[1] The Court notes that discovery was reopened after the time to file motions for summary judgment had come and gone in order to allow plaintiff's newly appointed counsel to take depositions and conduct paper discovery. It appears that during that period of discovery, which ended on May 12, 2010, certain evidence came to light that provides the basis for defendants' present motion.

summary judgment and ordered plaintiff to respond accordingly. Plaintiff's response was timely filed on August 18, 2010, and the motion therefore is now ripe for review.

Summary judgment is warranted only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986). See Conoshenti v. Public Service Electric & Gas Company, 364 F.3d 135, 140 (3d Cir. 2004). When the moving party has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The mere existence of some evidence favoring the non-moving party, however, will not defeat the motion. There must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). See McGreevy v. Stroup, 413 F.3d 359, 363-64 (3d Cir. 2005). In evaluating the evidence at the summary judgment stage, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Matreale v. New Jersey Dept. of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007).

In addition to claims of excessive force brought against defendants Eitner, Bowlin and Barkefelt, which are not at issue here, plaintiff alleges that he was subjected to cruel and unusual conditions of confinement at the hands of defendants in violation of the Eighth Amendment when he was placed in a "strip cell" on H Block following the altercation with Eitner, Bowlin and Barkefelt. Plaintiff contends not only that defendants Eitner, Bowlin and Barkefelt violated

his rights when they brought him a smock soaked in urine on the first night he was placed in the strip cell, but that defendant Grainey, as the Captain of the Restricted Housing Unit ("RHU"), is liable for the conditions he was exposed to during his two weeks in the cell, namely, that he was deprived of food, water, toilet paper and basic hygiene and was not permitted to flush the toilet. Plaintiff also alleges that he was not given a mattress for seven days forcing him to sleep on the concrete floor.

Defendants argue that they are entitled to summary judgment on these claims because the conduct attributed to Eitner, Bowlin and Barkefelt in bringing plaintiff a urine-soaked smock on one occasion does not rise to the level of an Eighth Amendment violation as no reasonable jury could find that he was denied the "minimal civilized measure of life's necessities," and because plaintiff has failed to allege or demonstrate that Grainey was personally involved in the decision to place plaintiff under the cell restrictions of which he complains. Defendants also argue that, to the extent plaintiff has alleged that the unlawful cell restrictions were part of a pattern and practice at SCI-Greene, he has failed to establish that Grainey was aware of the practice or that he in anyway approved the practice.

Notably, plaintiff has not addressed defendants' argument with respect to the claims against Eitner, Bowlin and Barkefelt or otherwise offered any basis upon which to find that their conduct, even if proven, ran afoul of the Eighth Amendment. As such, the Court finds that plaintiff has conceded the issue and that the Eighth Amendment condition of confinement claims against Eitner, Bowlin and Barkefelt are properly dismissed. The only remaining issue, then, is whether a material issue of fact exists for trial regarding whether Grainey had the requisite state of mind or knowledge of the restrictions placed on plaintiff while in the strip cell.

> An Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 ... (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.*

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001). Thus, a prison official must both be aware of and disregard an excessive risk to an inmates health or safety to be held accountable under a deliberate indifference claim. Id. at 133.

> The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware.... However, subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk.... Finally, a defendant can rebut a prima facie demonstration of deliberate indifference either by establishing that he did not have the requisite level of knowledge or awareness of the risk ....

Id. (internal citations omitted).

To support their position that there is an absence of material fact regarding Grainey's knowledge of plaintiff's cell restrictions,[2] defendants point to Grainey's deposition testimony in which he states that he only occasionally made rounds in the RHU because it interfered with the chain of command, and that he would normally not be apprized of cell restrictions placed on an inmate. Def. Exh. 2, pp. 59-62; 93-94. Grainey also testified that the paperwork designating inmate restrictions are kept at the Sergeant's desk so that the staff is aware of them, and that he

---

[2] As previously noted, defendants do not argue that the deprivations attributed to Grainey are not sufficiently serious to constitute an Eighth Amendment violation but argue only that plaintiff is unable to prove the second requirement – that Grainey had a sufficiently culpable state of mind.

4

would not be in a position to "catch a glimpse" of them walking to and from his office, but would only know about the restrictions if went over to look at the forms. Id. at pp. 62, 123. Although Grainey testified that at times he has checked to see that restrictions are not being placed on an inmate beyond what had been ordered, he also testified that he usually did so as the result of a conversation with, and/or a complaint from, the inmate and that he had no specific recollection of having any interaction with plaintiff while he was on H Block or ever talking to plaintiff about his restrictions. Id. at pp. 62-64.

The record also shows that RHU Captain Lorinda Winfield was the person who signed off on the paperwork placing plaintiff on restricted movement following the altercation with Eitner, Bowlin and Barkefelt, and that the form indicating what other restrictions were to be placed on plaintiff was signed by RHU Lieutenant Meighen -- neither of whom are defendants in this case. See Def. Exh. 2, pp. 52-53; Def. Exh. 3; Def. Exh. 4: pp. 9-11; 56.

Finally, defendants point to plaintiff's own deposition testimony in which he stated that his claims against Grainey are based solely on the fact that he is the Captain of the RHU and, thus, ultimately responsible for the conditions imposed on him in the strip cell, and that he was not claiming that defendant Grainey ordered those restrictions. Def. Exh. 1: pp. 36, 37.

This evidence amply supports a finding that defendant Grainey had no personal knowledge of the restrictions allegedly placed on plaintiff while in the strip cell. As such the burden shifts to plaintiff to provide the Court with specific facts that would permit a reasonable jury to find in his favor. Fed. R. Civ. P. 56(e)(2).

Plaintiff relies principally on an affidavit submitted by a fellow inmate, Michael Thornburgh, who was apparently incarcerated on H Block at the same time as plaintiff. With

5

respect to Grainey, Thornburgh has attested to the fact that he was the Captain of the RHU at SCI-Green during the relevant time period; that it was his practice to walk around H Block and in the pods; that it seemed to be Grainey's practice to look into each cell; that he would occasionally speak to the inmates as he walked through; and that inmates would frequently call out to him during his visits to complain about their treatment. Pl. Exh. A: ¶¶ 11-15. Thornburgh also states that he personally spoke to upper-level officers about plaintiff's restrictions and that he believes one of them was defendant Grainey because there were only a small number of upper-level officers. Lastly, Thornburgh asserts that when using the law library, which was across from Grainey's office, he overheard Grainey "discussing restrictions placed on the inmates in the RHU and other conditions of confinement." Id. at ¶¶ 16, 17.

Plaintiff also points to Bowlin's deposition testimony in which, according to plaintiff, he stated that Captain Grainey would regularly visit the blocks and pods of the RHU in 2004. he also cites to the deposition testimony of Grainey, wherein he testified that it was possible that he could have ordered the hygiene and mattress restrictions imposed on plaintiff. See Pl. Exh. C, p. 54; Pl. Exh. B, p. 127.

In the Court's view, the evidence relied upon by plaintiff is insufficient to allow a reasonable jury to conclude that Grainey actually knew about the conditions under which plaintiff was allegedly confined or that he was otherwise aware of and disregarded the risk to plaintiff's health. Thornburgh's assertions that it *seemed* to him that it was Grainey's practice to look into each cell when he walked around H Block, that Grainey would occasionally speak to the inmates and that inmates would frequently call out to him, falls short of establishing that Grainey looked into *plaintiff's* cell, that he spoke to *plaintiff* or that *plaintiff* was one of the inmates that called

6

out to him about his cell restrictions.³

As well, it cannot be reasonably inferred that Grainey was aware of plaintiff's conditions of confinement from Thornburgh's mere *belief* that he apprized Grainey of them simply because there were only a small number of upper-level officers that he could have reported them to. Nor is there anything about the fact that Grainey had discussions about restrictions placed on the inmates in the RHU that would suggest that those conversations were about plaintiff's restrictions or suggest that Grainey was aware of the conditions upon which plaintiff's claims are based. To conclude otherwise would be speculative at best.

The deposition testimony of Bowlin and Grainey cited by plaintiff is equally unavailing. Bowlin merely testified that the RHU Captain, whom he *believed* was Grainey at the time, would regularly visit F Block where Bowlin was serving, and occasionally walk through the pods. This evidence simply does permit the inference that Grainey was somehow aware of the restriction allegedly placed on plaintiff while in the strip cell in H Block.⁴

---

³Moreover, even if it could be established that Grainey looked into plaintiff's cell, it cannot be said that the lack of running water and hygiene products or the fact that plaintiff was not being provided with meals was obvious. Nor would it be obvious that a mattress restriction had been imposed for any length of time.

⁴Plaintiff also suggests in a footnote that Grainey must have been aware of the restrictions imposed on him in light of Bowlin's testimony that the restriction forms are either posted on a clipboard outside the prisoner's cell, so that anyone walking by would be able to see what those restrictions were, or posted behind the Sergeant's desk. See Pl. Brief, p. 6, n.4. Review of Bowlin's testimony, however, shows that he worked on F Block – not H Block – and that inmate restrictions are posted outside the *pod door*. He then allowed that every block is different and that others have them posted in the Sergeant's office. He did not say that the restriction form is posted outside the door of the prisoner's cell or that anyone walking by would be able to see what those restrictions were, as plaintiff has suggested. Nor did Bowlin say that plaintiff's restrictions were posted outside his door or were visible to anyone walking by. Pl. Exh. C, pp. 53-54. Indeed, Grainey testified that on H Block the restriction forms are kept behind the Sergeant's desk. Def. Exh. 2, p. 61. The record therefore is devoid of any evidence that Grainey saw the restriction form relevant to plaintiff. Moreover, even if Grainey had been privy to the form, it indicates only that plaintiff's exercise, showering, shaving, cell-cleaning, and movement when showering or

7

Similarly, when asked whether it was *possible* that he could have ordered the mattress restriction at issue and just forgotten about it, Grainey stated that it was possible; he, however, followed that response stating: "[b]ut I do not recall anything to do with denying a mattress to inmate use [sic]." Pl. Exh. B, p. 127. He also stated that while it was *possible* that he imposed a hygiene restriction, he also said he did not recall doing so and that "nothing in this incident suggests that [he] would have done so." Id. This testimony, coupled with the fact that RHU Lieutenant Meighen signed the form ordering plaintiff's restrictions and Grainey's testimony that he would not have been apprized of those restrictions, precludes a finding that Grainey knew of plaintiff's restrictions simply because he could not completely discount the possibility that he ordered a mattress or hygiene restriction. Again, any other conclusion would be speculative at best.

Further, it is not without significance that plaintiff expressly stated at his deposition that he was *not* claiming that defendant Grainey ordered the restrictions but that he was proceeding against him based on the fact that he is the Captain of the RHU and, thus, ultimately responsible for the conditions of his confinement. Def. Exh. 1: pp. 36, 37. It therefore appears that plaintiff seeks to hold Grainey liable under a theory of *respondeat superior*. Because is well settled that local government officials cannot be held liable under a theory of *respondeat superior*, plaintiff's claims against Grainey are properly dismissed as well. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

Accordingly, the Court hereby **GRANTS** defendants' motion in limine [Doc. 165],

---

exercising was restricted, and for no more than seven days. See Def. Exh. 3. Notably, the water restriction box is not checked and there is no reference to any restrictions regarding food, a mattress or hygiene products.

treated as a motion for summary judgment pursuant to Fed. R. Civ. P. 56, in which they request that the conditions of confinement claims brought against defendants Grainey, Eitner, Bowlin and Barkefelt be excluded.

        **IT IS SO ORDERED** this 24th day of August 2010.

/s/ *Francis X. Caiazza*
United States Magistrate Judge


cc:     All Counsel of Record via CM-ECF